**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF IDAHO**

| | |
|---|---|
| In Re:<br><br>**MICHELLE LOUISE COFER**<br><br>Debtor. | **Bankruptcy Case<br>No. 19-40361-JMM** |

**MEMORANDUM OF DECISION**

**Appearances:**

    Daniel C. Green, RACINE OLSON, Pocatello, Idaho, Attorney for chapter 7 trustee.

    Paul Ross, Paul, Idaho, Attorney for Debtor.

*Introduction*

Before the Court is "Trustee's Motion for an Order Confirming the Amount of Debtor's Homestead Exemption Following Conversion to Chapter 7," Dkt. No. 97 (the "Motion"), filed by Gary Rainsdon ("Trustee").[1]  The Motion seeks a determination that Debtor's homestead exemption is limited to the value determined when the case was under chapter 13, $32,020.56, and that appreciation inures to the chapter 7 estate. *Id*. Michelle Cofer ("Debtor") objects to the Motion, arguing property which vested in the

---

[1] Unless otherwise indicated, all statutory citations are to the Bankruptcy Code, Title 11 U.S.C. §§ 101–1532.

MEMORANDUM OF DECISION − 1

Debtor upon confirmation of its chapter 13 plan is not property for the estate upon conversion, and, alternatively, that appreciation inures to the Debtor. Dkt. No. 98 (the "Objection"). Trustee submitted a brief in reply to the Objection. Dkt. No. 102. A hearing was held on December 8, 2020, and the parties made oral arguments. The Court took the matter under advisement. The Court has now considered the parties arguments and the applicable law and issues the following decision which resolves the matter. Fed. R. Bankr. P. 7052; 9014.

## Facts

Debtor filed a chapter 13 petition on April 17, 2019. Dkt. No. 1. Her schedules reflect that she owns real property located at 28 West Clark Street in Paul, Idaho (the "Home"), valued on the date of the petition at $100,250. *Id.* at 10. Debtor claimed an exemption of $100,000 in the Home. *Id.* at 16. The Home was encumbered by a $61,073.75 mortgage held by Ditech and an $868.79 judgment lien owed to Outsource Materials. *Id.* at 20–21. On June 6, 2020, the Court granted Debtor's motion to avoid the judgment lien under § 522(f) held by Outsource Materials.[2] Dkt. No. 27. On September 24, 2019, the Court issued an order limiting the amount of the Debtor's exemption in the Home to $32,020.56. Dkt. No. 59.[3]

---

[2] Debtor established the judgment lien impaired her homestead exemption.

[3] This order granted chapter 13 trustee Kathleen McCallister's amended objection to claim of exemption, Dkt. No. 41, but also referenced Ms. McCallister's original objection, Dkt. No. 30.

MEMORANDUM OF DECISION – 2

On September 25, 2019, the Court entered an order confirming Debtor's chapter 13 plan. Dkt. Nos. 3, 60 (the "Plan"). Debtor's Plan provided that all property of the estate vested in the debtor upon confirmation. Dkt. No. 3 at 4. On March 6, 2020, the chapter 13 trustee moved to dismiss the chapter 13 case because Debtor was delinquent in making plan payments. Dkt. No. 66. After initially objecting to the motion to dismiss, Debtor filed a motion to convert to chapter 7. Dkt. No. 68. The Court granted Debtor's motion to convert on March 27, 2020. Dkt. No. 70.

Trustee now seeks an order "limiting the amount of Debtor's exemption in the Property in the Chapter 7 case to $32,020.56, and that any appreciation in the value of the Property is property of the Chapter 7 bankruptcy estate." Dkt. No. 97. Trustee seeks this relief so he may sell the Home for the benefit of the estate. Debtor objects, arguing the vesting provision in the plan and under § 1327(b) prevents the Home from becoming property of the chapter 7 estate under § 348(f)(1)(A). Dkt. No. 98 at 3. Alternatively, Debtor argues even if the Home revested to the estate under § 348(f)(1)(A), any appreciation in the value of the home belongs to the Debtor and the amount of the homestead exemption is determined based on the date of conversion. *Id.* at 3–5.

*Analysis and Disposition*

**A.    Property of the Estate Upon Conversion**

Property of the estate is broadly defined by § 541 and includes "all legal or equitable interests of the debtor in property as of the commencement of the case," and "[p]roceeds, product, offspring, rents, or profits of or from property of the

MEMORANDUM OF DECISION − 3

estate, except such as are earnings from services performed by an individual debtor after the commencement of the case." § 541(a)(1), (6).  In a chapter 13 case, property of the estate also includes earnings and property defined in § 541 acquired postpetition.  § 1306(a).   Upon conversion from a case under chapter 13, "property of the estate in the converted case [] consist[s] of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion."  § 348(f)(1)(A).  The phrase "date of the petition" means the date of the filing of the original petition because "[c]onversion of a case from a case under one chapter of this title to a case under another chapter of this title . . . does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief."  § 348(a).

      Debtor contends the vesting provision in the Plan, which is consistent with § 1327(b)–(c), vested absolute ownership of the Home in Debtor upon confirmation of the Plan, and the Home ceased to be property of the estate.  Dkt. No. 98 at 2–3.  Debtor claims this precludes the Home from being property of the estate in the converted case.  *Id.*  Debtor's position, which, in effect, implies an inherit conflict exists between § 348(f)(1) and § 1327(b), misconstrues the plain language of § 348(f)(1).  This Court recently summarized the standards for interpreting provisions of the Code:

> When interpreting a statute, the court's "task is to construe what Congress has enacted." *Duncan v. Walker*, 533 U.S. 167, 172, 121 S. Ct. 2120, 2124, 150 L. Ed. 2d 251 (2001).  Courts will "look first to the plain language of the

MEMORANDUM OF DECISION − 4

> statute, construing the provisions of the entire law, including its object and policy, to ascertain the intent of Congress." *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 830 (9th Cir. 1996) (internal quotation marks and citation omitted). "A primary canon of statutory interpretation is that the plain language of a statute should be enforced according to its terms, in light of its context." *ASARCO, LLC v. Celanese Chem. Co.*, 792 F.3d 1203, 1210 (9th Cir. 2015) (citing *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S. Ct. 843, 846, 136 L. Ed. 2d 808 (1997); *Wilshire Westwood Assocs. v. Atl. Richfield Corp.*, 881 F.2d 801, 803 (9th Cir. 1989)). "If the terms are ambiguous, [the Court] may look to other sources to determine congressional intent, such as the canons of construction or the statute's legislative history." *United States v. Nader*, 542 F.3d 713, 717 (9th Cir. 2008) (citing *Jonah R. v. Carmona*, 446 F.3d 1000, 1005 (9th Cir. 2006)). However, courts will resort to legislative history, even where the plain language is unambiguous, "where the legislative history clearly indicates that Congress meant something other than what it said." *Perlman v. Catapult Entm't, Inc.* (*In re Catapult Entm't, Inc.*), 165 F.3d 747, 753 (9th Cir. 1999).

*In re Evans*, 615 B.R. 290, 294 (Bankr. D. Idaho 2020). Further, "[u]nder accepted canons of statutory interpretation, we must interpret statutes as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous." *Boise Cascade Corp. v. U.S. E.P.A.*, 942 F.2d 1427, 1432 (9th Cir. 1991).

For Debtor's argument to hold water, § 348 would have to read "property of the estate in the converted case shall consist of property of the estate, as of the date of *conversion*[4], that remains in the possession of or is under the control of the

---

[4] Here the Court, for illustrative purposes, has substituted the italicized word "conversion" for the words "filing of the petition" that appear in the statute.

MEMORANDUM OF DECISION − 5

debtor on the date of conversion." However, § 348(f)(1)(A) states that "property of the estate in the converted case shall consist of property of the estate, *as of the date of filing of the petition*, that remains in the possession of or is under the control of the debtor on the date of conversion" *Id*. (emphasis added). A plain language reading of § 348(f)(1)(A) results in the Home, which was owned by the Debtor on the date she filed her chapter 13 petition, and remained in the Debtor's possession on the date of conversion, being property of the chapter 7 estate upon conversion.

Further, interpreting § 1327(b)–(c) as preventing the operation of § 348(f)(1)(A) on conversion would create an inconsistency in the code. Such an inconsistency can be prevented because these two sections can be read in harmony with one another. That harmony is that a debtor is vested with property of the chapter 13 estate upon plan confirmation, but upon conversion, any such property that was property of the estate as of the date of the petition that a debtor still possesses or controls (*i.e.*, has not already exercised rights to sell the property) is recaptured into the chapter 7 estate.

This reading is consistent with the case law on point. The Debtor cited several cases in support of her argument that the Home is not property of the estate. Only one, however, *Sender v. Golden (In re Golden)*, 528 B.R. 803 (Bankr. D. Colo. 2015), discussed the suggested conflict between § 348(f)(1)(A) and § 1327(b). *Golden* cuts deeply against Debtor's argument:

MEMORANDUM OF DECISION − 6

> Property of the estate vests in the debtor upon confirmation of a Chapter 13 plan. 11 U.S.C. § 1327(b). Pursuant to the revesting provision of Section 1327(b), upon confirmation, the debtor enjoys full ownership and control over such revested property. Section 1327(b), however, must be reconciled with Section 348, which mandates the effect of conversion. Section 348(f)(1)(A) provides that when a Chapter 13 case is converted to Chapter 7, property of the estate in the Chapter 7 case includes "property of the estate, *as of the date of the filing of the petition, that remains in the possession or is under the control of the debtor on the date of conversion*" (emphasis added).
>
> Based on the Black's Law definition of "revesting," the Ninth Circuit concluded that the automatic stay did not apply to property that revested in the debtor upon confirmation of the Chapter 13 plan. *Cal. Franchise Tax Bd. v. Kendall (In re Jones),* 657 F.3d 921, 928–29 (9th Cir. 2011). *See also In re Van Stelle,* 354 B.R. 157, 168 (Bankr. W.D. Mich. 2006) (finding that the term vest in Section 1327(b) means "an absolute transfer of the bankruptcy estate's interest in property"). *But see In re Brensing,* 337 B.R. 376, 383 (Bankr. D. Kan. 2006) ("Section 1327(b) does not operate to remove property of the estate from the bankruptcy estate but merely places control of this estate property in the debtor pending conclusion of the Chapter 13 proceedings."). . . . This Court declines to adopt an interpretation of Section 1327(b) that renders Section 348(f)(1)(A) a nullity.

*Golden*, 528 B.R. at 808–09. Though the court in *Golden* identified and rejected a different interpretation of § 1327(b) than the Ninth Circuit's approach to § 1327(b), it importantly read § 348(f)(1)(A) as revesting in the chapter 7 estate property that had been vested in a debtor upon confirmation of its chapter 13 plan. *Id.* The only reason *Golden* concluded that the subject property in that case was not property of the estate in the converted case was because debtor had sold the property during the chapter 13 case and lawfully disposed of the proceeds prior to conversion. *Id.* at 809.

Courts in other jurisdictions have generally taken this approach. For example, the court in *In re John*, 352 B.R. 895 (Bankr. N.D. Fla. 2006) stated:

MEMORANDUM OF DECISION − 7

> [The debtors] refer to 11 U.S.C. § 1327 to support the assertion that, since the Property at issue vested in the Debtors under the Chapter 13 plan, it is not part of the converted estate and therefore the Trustee has no interest in such Property. This argument is meritless. The Debtors are correct that the Property did indeed vest in the Debtors upon confirmation of their plan—in Chapter 13. 11 U.S.C. § 1327(b). However, this is no longer a Chapter 13 case. Once a case is converted from Chapter 13 to Chapter 7, the provisions of Chapter 13 that define the effect of a plan's confirmation have no application in determining the composition of the Chapter 7 estate. *Compare* § 348 *with* § 1327. It is elementary that, upon conversion, the provisions of the chapter to which the case is converted apply, while the provisions of the chapter from whence it came cease to be determinative, unless the Code provides otherwise. That is the whole concept of conversion. Moreover, reading § 1327 as determining the property of the estate after conversion to Chapter 7 would render § 348 entirely superfluous.

*Id.* at 899–900. *See also Murdock v. Holquin*, 323 B.R. 275, 285 n.8 (N.D. Cal. 2005) (distinguishing between conversion from chapter 13 to chapter 7 and conversion from chapter 11 to chapter 7); *In re Campbell*, 313 B.R. 313, 321 (10th Cir. BAP 2004) (analogizing to property revested in debtor under § 1327(b) in determining whether property revested under § 522(l) becomes estate property on conversion); *In re Simmons*, 286 B.R. 426, 430–31 (Bankr. D. Kan. 2002) (distinguishing between plans that allow revesting and those that do not). *But see In re Brown,* 375 B.R. 362, 381 (Bankr. W.D. Mich. 2007) (concluding subject property removed from the estate by operation of § 1327(b) was not subject to administration upon conversion).

In sum, sound statutory interpretation and the relevant authorities support the conclusion that the plain language of § 348(f)(1)(A) revests in the estate of the

MEMORANDUM OF DECISION − 8

converted case all property of the estate of the original filing still in the possession or control of Debtor despite the provisions of § 1327.

### B. Exemptions upon Conversion

Trustee argues the Debtor's homestead exemption should remain at $32,020.56—the amount determined to be Debtor's equity on the date of the petition. Dkt. No. 97 at 4; Dkt. No. 102 at 11–12. Debtor argues the valuation of her homestead exemption during the chapter 13 case does not apply to the converted case by operation of § 348(f)(1)(B), and Debtor can claim an exemption of $100,000[5] in the Home. Dkt. No. 98 at 4–5. Section 348(f)(1)(B) provides:

> valuations of property and of allowed secured claims in the chapter 13 case shall apply only in a case converted to a case under chapter 11 or 12, but not in a case converted to a case under chapter 7, with allowed secured claims in cases under chapters 11 and 12 reduced to the extent that they have been paid in accordance with the chapter 13 plan[.]

However, this section is inapplicable to exemptions because exemptions are determined as of the petition date pursuant to § 522(a)(2), and § 348(a) makes clear that conversion does not change the date of the petition. *In re Whitman*, 106 B.R. 654, 656–57 (Bankr. S.D. Cal. 1989); In re Thurmond, 71 B.R. 596, 597–98 (Bankr. D. Or. 1987); 3 Collier on Bankruptcy ¶ 348.07[3] (16th 2020).

---

[5] The Court notes the maximum homestead exemption allowed under Idaho Code § 55-1003 increased from $100,000 to $175,000 on March 23, 2020 along with other changes to the language of that subsection. Debtor has not argued that the March 23, 2020 amendment is applicable to these facts.

MEMORANDUM OF DECISION − 9

Debtor's homestead exemption was previously limited to $32,020.56 based on the value of the Home and the Diatec mortgage at the time of the filing of the chapter 13 petition. *See* Dkt. No. 59. Under the "snapshot rule" the exemptions that can be claimed and the amount of such exemptions are frozen as of the date of the petition. *Wilson v. Rigby*, 909 F.3d 306, 308-09 (9th Cir. 2018). The conversion of this case does not change the value of the Home or the exemption against it as they existed at the time of the petition. Thus, Debtor's homestead exemption remains limited to $32,020.56—the amount this Court previously determined Debtor could claim as an exemption based on the date of the petition.

### C.   Postpetition Appreciation upon Conversion

Trustee asserts the current value of the home is around $140,000 and seeks an order that states "appreciation in the value of the [Home] is property of the chapter 7 estate." Dkt. No. 97 at 3–4. Debtor argues that postpetition, pre-conversion appreciation in the value of the Home belongs to the Debtor, equating such appreciation with postpetition earnings which must be returned absent bad faith as held in *Harris v. Viegelahn*, 135 S. Ct. 1829, 1837 (2015).[6] Dkt. No. 98 at 3–4. Trustee counters that post-BAPCPA § 348(f)(1)(B) prevents such a

---

[6] Despite Debtor's assertions that *Harris* contains language that supports Debtor's position on appreciation, *Harris* only discussed undistributed post-petition wages and did not discuss appreciation. *Harris* does not provide much support for Debtor's arguments in the present matter.

MEMORANDUM OF DECISION − 10

conclusion. Dkt. No. 102 at 11–12. The parties cite two recent cases from outside the Ninth Circuit. Debtor cites *In re Barrera*, 2020 WL 5869458 (10th Cir. BAP Oct. 2, 2020), *appeal filed* (*Barrera II)* (this is an unpublished 10th Cir. BAP decision). Trustee cites *In re Goins*, 539 B.R. 510 (Bankr. E.D. Va. 2015).

*Goins* concluded postpetition appreciation belongs to the estate upon conversion:

> The Trustee argues that the 2005 amendment to Section 348(f)(1)(B) did away with any notion of implicit valuation as a result of confirmation in a Chapter 13 case, because Section 348(f)(1)(B) now expressly provides that valuations from Chapter 13 do not carry over into converted Chapter 7 cases. The Court finds in favor of the Trustee here, but not because the 2005 amendment to Section 348(f)(1)(B) legislatively overruled the implicit valuation cases. *See* 11 U.S.C. § 348(f)(1)(B). Rather, the Court agrees that the Trustee is entitled to the post-petition appreciation in the property because the real estate was *always* property of the estate under Section 541(a) of the Code. Section 541(a)(1) broadly defines property of the estate to include "all legal or equitable interests of the debtor in property as of the commencement of the case," "wherever located and by whomever held." 11 U.S.C. § 541(a)(1). Further, Section 541(a)(6) provides that all "proceeds, product, offspring, rents or profits of or from property of the estate" constitutes property of the estate. 11 U.S.C. § 541(a)(6). Numerous cases relying on Section 541(a)(6) have held that post-petition appreciation in property belongs to the estate.

*In re Goins*, 539 B.R. at 515–16 (citing *e.g., See In re Hyman,* 967 F.2d 1316 (9th Cir. 1992); *In re Reed,* 940 F.2d 1317, 1323 (9th Cir. 1991)).[7]

---

[7] Though *Goins* relies on the Ninth Circuit cases of *Hyman* and *Reed* for the proposition that the post-petition appreciation belongs to the estate upon conversion, these cases did not address that issue. Neither *Hyman* nor *Reed* involved a converted case, and their reasoning addressed situations where the value of the subject property appreciated during the pendency of chapter 7 cases. *See generally Hyman*, 967 F.2d 1316; *Reed*, 940 F.2d 1317.

MEMORANDUM OF DECISION − 11

*Barrera II*, on the other hand, concludes that postpetition appreciation belongs to the Debtor upon conversion. *Barrera II*, 2020 WL 5869458 at *9. While Debtor cites the Tenth Circuit BAP decision in *Barrera II*, the United States Bankruptcy Court for the District of Colorado provides the most thorough analysis of the issue in *In re Barrera*, 620 B.R. 645 (Bankr. D. Colo. 2020), *aff'd,* No. BAP CO-20-003, 2020 WL 5869458 (10th Cir. BAP Oct. 2, 2020) (*Barrera I*). *Barrera I* based its conclusion that appreciation inures to the debtor upon conversion on the legislative history of § 348. *Id.* at 649–53 (citing *e.g., In re Niles*, 342 B.R. 72, 76 (Bankr. D. Ariz. 2006)).[8] *Barrera I* concluded that the meaning of property in § 348(f)(1)(A) was ambiguous, and turned to the legislative history of § 348(f), stating:

> The House Report indicates that § 348(f)(1)(A) was enacted to:
>
>> clarify the Code to resolve a split in the case law about what property is in the bankruptcy estate when a debtor converts from chapter 13 to chapter 7. The problem arises because in chapter 13 . . . any property acquired after the petition becomes property of the estate, at least until confirmation of a plan. Some courts have held that if the case is converted, all of

---

[8] *Barrera I* also cited *Kendall v. Lynch (In re Lynch)*, 363 B.R. 101, 106-07 (9th Cir. BAP 2007), but noted that "the cases relying solely on pre-BAPCPA § 348(f)(1)(B) and the concept of implicit valuation . . . are no longer persuasive on the question of what constitutes property of the estate when a debtor converts his case from chapter 13 to chapter 7." *Barrera*, 620 B.R. at 650 n.4. As Trustee points out, *Lynch*, upon which Debtor relies, addressed this issue as it arose under pre-BAPCPA § 348. *Lynch*, 363 B.R. at 103. While this Court agrees that *Lynch* is not as persuasive for discussion of post-BAPCPA § 348(f)(1)(B), its analysis is still persuasive when it addressed the chapter 7 trustee's proposed liquidation of the Debtor's home as discussed below. *In re Hodges*, 518 B.R. 445, 448 (E.D. Tenn. 2014) (concluding pre-BABCPA cases addressing § 348(f)(1)(A) remain persuasive).

MEMORANDUM OF DECISION − 12

this after-acquired property becomes part of the estate in the converted chapter 7 case, even though the statutory provisions making it property of the estate do not apply to chapter 7. Other courts have held that the property of the estate in a converted case is the property the debtor had when the original chapter 13 petition was filed.

These latter courts have noted that to hold otherwise would create a serious disincentive to chapter 13 filings. For example, a debtor who had $10,000 equity in a home at the beginning of the case, in a State with a $10,000 homestead exemption, would have to be counseled concerning the risk that after he or she paid off a $10,000 second mortgage in the chapter 13 case, creating [another] $10,000 in equity, there would be a risk that the home could be lost if the case were converted to chapter 7 (which can occur involuntarily). *If all of the debtor's property at the time of conversion is property of the chapter 7 estate, the trustee would sell the home, to realize the $10,000 in [non-exempt] equity for the unsecured creditors and the debtor would lose the home.*

This amendment overrules the holding in cases such as *Matter of Lybrook*, 951 F.2d 136 (7th Cir. 1991) and adopts the reasoning of *In re Bobroff*, 766 F.2d 797 (3d Cir. 1985). However, it also gives the court discretion, in a case in which the debtor has abused the right to convert and converted in bad faith, to order that all property held at the time of conversion shall constitute property of the estate in the converted case.

*Id.* at 652–53 (quoting H.R. Rep. No. 103-835, at 57 (1994), *as reprinted in* 1994 U.S.C.C.A.N. 3340, 3366) (emphasis added).[9]

---

[9] The Court notes that the House Report preceded the enactment of BAPCPA, which amended, among other provisions, § 348(f)(1)(B). Nonetheless, BAPCPA did not amend § 348(f)(1)(A), and consequently does not override the congressional intent evident in the 1994 House Report. *Hodges*, 518 B.R. at 448 ("It should be noted that although § 348(f)(1)(B) was amended by [BAPCPA], because the issue in this case is controlled by § 348(f)(1)(A), which was not amended by BAPCPA, the Court may rely on cases construing § 348(f)(1)(A) before

MEMORANDUM OF DECISION − 13

*Barrera I* reasoned that the legislative history, which demonstrates "Congress' concern that the chapter 7 trustee was getting the postpetition increase in equity in the debtor's home," supports a conclusion that "property" in § 348(f)(1)(A) means "property *as it existed on the petition date*, with all its attributes, including the amount of equity that existed on that date." *Id.* at 653. The court found no distinction between equity increases due to the debtor's paydown of liens or that due to changes in the market because "the legislative history points toward is Congress' intent to leave a debtor who attempts a repayment plan no worse off than he would have been had he filed a chapter 7 case at the outset." *Id.*

*Barrera I* also cited commentary by Keith M. Lundin and William H. Brown in support of this interpretation:

> [I]t seems to have been congressional intent to take a snapshot of the estate at the filing of the original Chapter 13 petition and, based on that inventory, include in the Chapter 7 estate at conversion only the portion that remains in the possession or control of the debtor.  The spirit of § 348(f)(1)(A) is best captured by a rule that property acquired by the Chapter 13 estate or by the debtor after the Chapter 13 petition does not become property of the Chapter 7 estate at a good-faith conversion.  The method of acquisition after the Chapter 13 petition should not matter: post-petition property does not become property of the Chapter 7 estate at conversion, whether acquired with earnings by the debtor, by transfer to the debtor—for example, an inheritance after 180 days after the petition—*or by appreciation in the value of a pre-petition asset*.

---

BAPCPA came into effect.  Further, cases coming after the BAPCPA amendment have not challenged the established meaning of § 348(f)(1)(A).").

MEMORANDUM OF DECISION − 14

*Id.* (quoting Keith M. Lundin & William H. Brown, *Chapter 13 Bankruptcy*, § 316.1, at ¶ 26 (4th ed. 2004) (the "House Report")) (emphasis added).

Lastly, *Barrera I* addressed public policy concerns that such an interpretation would lead to a windfall to debtors. *Id.* at 653–54. *Barrera I* dismissed this concern, reasoning a chapter 7 debtor would usually seek abandonment of the property if the debtor believes the case will remain open for a significant period to avoid the possibility that the trustee can reap the benefits of an increase in equity. *Id.* In addition, the court reasoned that where the case will be administered quickly, the trustee is unlikely to benefit from significant increases in equity. *Id.*

As noted earlier, a portion of the analysis of the Ninth Circuit BAP in *Lynch*, 363 B.R. 101 (9th Cir. BAP 2007), is helpful here. There the BAP was addressing, and ultimately rejecting, arguments based on a number of reported cases that the confirmation of a chapter 13 plan has an implicit finding that the value of the debtor's home is what was scheduled by the Debtor. *Id* at 104–06. While the 2005 BACPA amendments to 348(f)(1)(B) have essentially eliminated the holdings in cases regarding implicit value, the BAP concluded that use of an implicit valuation in a case converted from a chapter 13 to a chapter 7 was improper. The BAP, however, recognized that equity not only created by payments to secured claims but also property appreciation subsequent to the chapter 13 petition should be excluded as estate property in a case converted to

MEMORANDUM OF DECISION − 15

chapter 7. *Id.* at 107. That debtors should retain equity created during the chapter 13 case, according to the BAP, is not only reflected in the legislative purpose of § 348(f) but is also buttressed by § 348(f)(2) which directs the bankruptcy court to look to the date of conversion when a 13 is converted in bad faith. *Id.*

The Court finds the reasoning of *Barrera I* and *Lynch* more persuasive than that of *Goins* because it better reflects the legislative intent of § 348. Conversion from chapter 13 to chapter 7 creates an estate in the property that would have been property of the estate as of the date of the petition that is still possessed or controlled by the debtor. Based on the comments in the House Report, Congress took issue with the remedy Trustee seeks in this motion. Further, as Debtor had equity in the Home on the date of the petition, the home would likely have been abandoned to the Debtor if this case had proceeded under chapter 7 from its commencement. Thus, the appreciation should not belong to the estate now merely because the case began as a chapter 13 case and was converted to a chapter 7 case. The Court also notes that a trustee maintains a recourse against a debtor who converts in bad faith which includes all postpetition assets in the estate of the converted case. § 348(f)(2). Trustee has pointed to nothing indicating Debtor converted this case in bad faith. Therefore, the Court concludes that the appreciation in the Home inured to the Debtor upon conversion.

### *Conclusion*

Based on the foregoing, Trustee's Motion, Dkt. No. 97, will be granted in part and denied in part. The portion of the Motion seeking a determination that Debtor's

MEMORANDUM OF DECISION − 16

homestead exemption is limited to $32,020.56 will be granted.  The Court rejects Debtor's contentions that the Home is not property of the estate and that, if it were property of the estate, the Debtor could claim an exemption as of the date of conversion.  However, Trustee's argument that the estate is entitled to postpetition appreciation upon conversion fails.  Thus, Trustee's Motion will be denied to the extent that it seeks a determination that postpetition appreciation is property of the estate.  The Court will enter an appropriate order.



DATED:  January 8, 2021

_____
JOSEPH M. MEIER
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION – 17